IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CAMILA FORY MINA, | | |
| Petitioner, | | 8:25CV583 |
| v. | | |
| DONALD J. TRUMP, in his official capacity as President of the United States; KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; ALLEN GILL, in his official capacity as Field Office Director of Omaha office of United States Immigration and Customs Enforcement; PAMELA BONDI, in her official capacity as Attorney General of the United States; TODD M. LYONS, in his official capacity as Acting Director of the United States Immigration and Customs Enforcement; PETER BERG, in his official capacity as St. Paul Field Office Director for Enforcement and Removal Operations, United States Immigration and Customs Enforcement; and ROBERT SORENSON, in his official capacity as Cass County Sheriff, Official of the Cass County Detention Center, | | **MEMORANDUM AND ORDER** |
| Respondents. | | |

On September 24, 2025, petitioner Camila Fory Mina ("Mina") filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (Filing No. 1) against Donald J. Trump, in his official capacity as President of the United States; Kristi Noem, in her official capacity as Secretary of the United States Department of Homeland Security ("DHS"); Allen Gill, in his official capacity as Omaha Field Office Director of United States Immigration and Customs Enforcement ("USCIS"); Pamela Bondi, in her official capacity as Attorney General of the United States; Todd M. Lyons, in his official capacity as Acting Director of

United States Immigration and Customs Enforcement ("ICE"); Peter Berg, in his official capacity as the St. Paul Field Office Director for Enforcement and Removal Operations for ICE (together, the "federal respondents"); and Robert Sorenson ("Sorenson"), in his official capacity as Sheriff of Cass County, Nebraska, and Official of the Cass County Detention Center[1] (together, "respondents").

That same day, the Court issued an order for respondents to show cause why the petition should not be granted (Filing No. 4). After the Court granted the federal respondents' unopposed motion for an extension of time to file a responsive pleading (Filing No. 13), they responded on October 10, 2025 (Filing No. 20). Mina replied on October 16, 2025 (Filing No. 23). The Court held a hearing on November 4, 2025 (Filing No. 27) with counsel for Mina and the federal respondents present. For the reasons that follow, Mina's petition for a writ of habeas corpus is denied.

## I.   BACKGROUND[2]

This case has a tortured procedural history. The parties also disagree on some basic facts which hinders the Court's ability to navigate that history and decide the important issues raised by Mina's petition. Mina is a native and citizen of Colombia who entered the

---

[1]Sorenson, who has not entered an appearance in this case, is the Sheriff of Cass County, Nebraska. The Cass County Sheriff's Office and Cass County Jail are within the geographical boundaries of the District of Nebraska. The Court assumes Mina is detained at the Cass County Jail and that Sorenson is the actual custodian, while DHS and ICE have legal custody of Mina. As the party alleged to have physical custody of Mina, the Court would expect him to play a role in her § 2241 petition, but the parties don't discuss him outside of naming him in the initial petition. Nor have they indicated that Sorenson has been served. And since Sorenson has not been served, the Court "may not exercise power over [him.]" *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999); *see id.* at 347 (noting it is a "bedrock principle" that "an individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process").

[2]The background facts are taken from the parties' statements of fact and Mina's immigration paperwork that the parties have submitted.

United States on August 1, 2022.³ According to Mina's DHS "Form I-213, Record of Deportable/Inadmissible Alien," she was arrested upon crossing the border near Eagle Pass, Texas (Filing No. 22-1). She was processed for expedited removal with a positive credible-fear determination and released from custody on "Interim Parole" on August 11, 2022 (Filing No. 22-1). On October 26, 2022, DHS mailed a Notice to Appear ("NTA") to her residence in Des Moines, Iowa, ordering Mina to appear before an Immigration Judge ("IJ") with the Department of Justice's Executive Office for Immigration Review ("EOIR") in Omaha, Nebraska on July 24, 2024 (Filing No. 1-7). The NTA classified Mina as "an alien present in the United States who has not been admitted or paroled," and charged her as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act of 1952 ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i) and INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I) (Filing No. 1-7).

On August 4, 2023, while her removal proceedings were pending, Mina filed a "Form I-589, Application for Asylum and for Withholding of Removal" ("asylum claim"). She then appeared *pro se* before an IJ at the Omaha EOIR on May 29, 2025. Because Mina had been present in the United States for less than two years before being determined to be inadmissible, DHS moved to dismiss the NTA to place Mina in expedited removal proceedings (Filing Nos. 20, 22). Mina opposed dismissal, as she wanted to continue pursuing her defensive asylum claim. The IJ granted DHS's motion to dismiss the NTA

---

³The record is not clear on whether Mina entered without inspection or at a port of entry. At the hearing, Mina's counsel contended, without support, that Mina entered through a port of entry and was released into the country on an order of supervision. Mina's petition (Filing No. 1) is consistent with this version, stating that she "was released on her own recognizance, not paroled" into the United States. However, counsel for the federal respondents stated at the hearing that Mina was not inspected by an immigration officer upon entering the United States and was not admitted or paroled into the country. Her immigration paperwork is somewhat ambiguous on this point. Both Notices to Appear from DHS state "[y]ou are an alien present in the United States who has not been admitted or paroled" and that Mina entered the United States "at an unknown location," (Filing Nos. 1-4, 1-7), before being granted "Interim Parole" (Filing No. 22-1).

and Mina appealed to the Board of Immigration Appeals ("BIA") (Filing Nos. 20, 23). That appeal is still pending.

That same day, DHS took Mina into custody as an "applicant for admission" under INA § 235(b)(2), 8 U.S.C. § 1225(b)(2). She remains in custody to this day. This is relevant because aliens detained under § 1225(b)(2) must remain in custody throughout their removal proceedings and are not entitled to a bond hearing. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (noting that § 1225(b)(1) and (2) "mandate detention of applicants for admission until certain proceedings have concluded").

With Mina's appeal still pending, DHS initiated the expedited removal process by first referring Mina to an USCIS asylum officer for another credible-fear determination in accordance with § 1225(b)(1)(A)(ii) (Filing No. 22). USCIS again found Mina had a credible fear of persecution and DHS issued a second NTA on June 28, 2025, with charges identical to the first NTA (Filing No. 22-3, Ex. C).

The parties appeared at a master-calendar hearing on August 20, 2025, before the IJ. At that hearing, the IJ (1) found that the second NTA should have been rejected "due to the previous NTA being on appeal" and (2) granted DHS's motion to dismiss the second NTA (Filing Nos. 1-2). As a result, Mina asserts she has no active case before the IJ and no hearings scheduled until the BIA resolves her appeal of the NTA dismissal. Thus, Mina's ability to present her defensive asylum claim is paused as well. The federal respondents do not dispute this, and a quick search of Mina's "Alien Registration Number" in EOIR's database confirms that she does not have a pending case or any upcoming hearings.

At that same hearing, Mina requested a bond-redetermination hearing under § 236(a) of the INA, 8 U.S.C. § 1226(a), despite being held under § 1225(b)(2). Section 1226(a) applies to aliens who are "arrested and detained" on "a warrant issued by the Attorney General" for removal. Unlike with § 1225(b), an alien held under § 1226(a) can seek release on bond. *See id.* § 1226(a)(2)(A) (providing that an alien arrested and detained

4

on a warrant by the Attorney General may be released on "bond of at least $1,500" and "conditions prescribed by" the Attorney General).

After considering the parties' arguments and reviewing the record, the IJ found "no factors that [releasing Mina] could lead to a danger to the community" and noted Mina "has no criminal history" (Filing No. 1-2). The IJ further found that although Mina presented a moderate flight risk since she has only been in the country since 2022, she "has some family" in the United States, "has appeared in Court," and "has elicited fear of return to Colombia." The IJ granted Mina a $6,000 bond to compensate for the flight-risk concerns.

This determination was made over DHS's objection that § 1225(b)(2) applied to Mina and deprived the IJ of jurisdiction to consider a bond. DHS immediately appealed the IJ's decision to the BIA, which, pursuant to 8 C.F.R. § 1003.19(i)(2), triggered an automatic stay of the IJ's bond order. DHS filed its formal notice of appeal with the BIA on August 28, 2025. *See id.* (providing that in bond determinations pursuant to § 1226, where the IJ "authoriz[es] release (on bond or otherwise)" but "DHS has determined that [the] alien should not be released," the IJ's order "shall be stayed upon DHS's filing of a notice of intent to appeal").

Mina remains detained under the automatic stay of the IJ's bond order, which should expire after 90 days. *See* 8 C.F.R. § 1003.6(c)(4). It is undisputed, however, that there are numerous ways Mina's detention can be extended through various regulations providing for discretionary stays. And given the BIA's precedential decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) (holding that IJs lack authority to hear bond requests or to grant bond to aliens like Mina who are present in the United States without admission), DHS will very likely prevail on its appeal of the bond order, meaning Mina will then be detained under § 1225(b).

On September 24, 2025, Mina filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 with this Court, arguing that her detention became unlawful on

August 20, 2025, when the automatic-stay regulation halted the IJ's bond order. She specifically argues that her continued detention is unlawful because (1) DHS's invocation of the automatic-stay regulation violates her due-process rights under the Fifth Amendment to the United States Constitution; (2) she should not be subject to mandatory detention under § 1225(b)(2); and (3) the automatic-stay regulation exceeds the authority given to the Attorney General by Congress and eliminates IJs' discretionary authority to make custody determinations.

## II.   DISCUSSION

Absent suspension, "the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). Under § 2241, the writ is extended to persons "in custody in violation of the Constitution or laws or treaties of the United States." 8 U.S.C. § 2241(c)(3). The Court's habeas jurisdiction includes challenges to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Rasul v. Bush*, 542 U.S. 466, 473, 483 (2004).

Here, Mina alleges she is detained in violation of the statutory scheme set forth in §§ 1225 and 1226, as well as in violation of her due-process-rights under the Fifth Amendment. Mina is physically detained within the geographical boundaries of this district and the federal respondents do not dispute that this Court possesses habeas jurisdiction.

### A.   Classification under §§ 1225 and 1226

Judges in this district, like many others around the country, have already wrestled with the underlying statutory framework of this case and reached different conclusions. *Compare Carlon v. Kramer*, No. 4:25CV3178, 2025 WL 2624386, at *1-2 (D. Neb. Sept. 11, 2025); *Arce v. Trump*, No. 8:25CV520, 2025 WL 2675934, at *1 (D. Neb. Sept. 18, 2025); *and Giron Reyes v. Lyons*, No. C25-4048-LTS-MAR, 2025 WL 2712427, at *1-2 (N.D. Iowa Sept. 23, 2025); *with Vargas Lopez v. Trump*, No. 8:25CV526, 2025

6

WL 2780351, at *5-6 (D. Neb. Sept. 30, 2025); *and Barrios Sandoval v. Acuna*, No. 6:25-cv-01467, 2025 WL 3048926, at *2-4 (W.D. La. Oct. 31, 2025). Section 1225(b) governs the "inspection of applications for admission." Congress has defined an applicant for admission as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)." 8 U.S.C. § 1225(a)(1). Despite the lack of clarity around Mina's arrival to the United States and the basis for her interim parole, the parties agree that Mina was not admitted to the United States. She therefore fits squarely within the definition of an "applicant for admission." *See id.*

Under § 1225(b)(2), an "applicant for admission" who is "seeking admission" must be detained pending a removal proceeding without bond. *See Jennings*, 583 U.S. at 287-88. By contrast, aliens detained under 8 U.S.C. § 1226(a) may be given an individualized bond assessment. *Id.* at 288.

As noted above, if the IJ decides to authorize bond, that decision may be temporarily stayed if DHS appeals the bond order. 8 C.F.R. § 1003.19(i)(2). That regulation provides as follows:

> In any case in which DHS has determined that an alien should not be released or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon DHS's filing of a notice of intent to appeal the custody redetermination (Form EOIR-43) with the immigration court within one business day of the order, and, except as otherwise provided in 8 CFR 1003.6(c), shall remain in abeyance pending decision of the appeal by the [BIA]. The decision whether or not to file Form EOIR-43 is subject to the discretion of the Secretary [of DHS].

*Id.* The automatic stay will cease upon a decision of the BIA or 90 days, whichever comes sooner. *See* 8 C.F.R. § 1003.6(c)(4) ("If the [BIA] has not acted on the custody appeal, the automatic stay shall lapse 90 days after the filing of the notice of appeal").

7

Although the automatic-stay regulation is the operative mechanism of her detention pending DHS's appeal of the bond order, the federal respondents argue that Mina's confinement is also statutorily authorized by 8 U.S.C. § 1225(b)(2) as an applicant for admission. That provision requires detention throughout Mina's entire removal proceedings (Filing No. 20).

Mina responds that only § 1226(a) applies to her, not § 1225 (Filing No. 23). While some courts have held that § 1225(b)(2) only "applies to aliens encountered as they are attempting to enter the United States or shortly after they gained entry without inspection," *Arce*, No. 8:25CV520, 2025 WL 2675934, *3 n.3 (citing cases),[4] others have concluded that § 1225 can apply to aliens detained within the country if they were never admitted, *see, e.g., Barrios Sandoval*, 2025 WL 3048926, at *2-4; *Vargas Lopez*, No. 8:25CV526, 2025 WL 2780351, at *5-6. And still others have found it is unnecessary to rule on the proper interpretation of §§ 1225 and 1226 to consider an as-applied challenge to the

---

[4]Some courts that have held that § 1225 cannot apply to aliens present in the country have emphasized the term "arriving aliens" in the title of § 1225 and "seeking admission" in § 1225(b)(2)(A). *See, e.g., Orellana v. Noem*, No. 4:25-CV-112-RGJ, 2025 WL 3006763, at *3-4 (W.D. Ky. Oct. 27, 2025). They argue that it is "difficult to find that an individual is 'seeking admission' when that noncitizen never attempted to do so." *Id.* That may be, but it ignores 8 U.S.C. § 1182(d)(5), which provides that an alien present in the country who was paroled after arrival is "returned to the custody from which [the alien] was paroled" if the Secretary of DHS ends the parole. INA § 212(d)(5), 8 U.S.C. § 1182(d)(5). Thereafter, the formerly paroled alien's "case shall continue to be dealt with in the same manner as that of any other applicant for admission[.]" *Id.*; *see also* 8 C.F.R. § 1003.19(h)(2)(i)(B) (describing "aliens paroled after arrival pursuant to section 212(d)(5)" of the INA as "arriving aliens"). The federal regulations also define "arriving alien" as an applicant for admission "coming or attempting to come into the United States" whether or not at a port of entry. 8 C.F.R. § 1001.1(q). That definition further provides that an alien "remains an *arriving alien* even if paroled pursuant to section 212(d)(5) of the [INA], *and even after any such parole is terminated or revoked*." *Id.* (emphasis added). So, it is hard to say that applying the term "arriving alien" to an applicant for admission paroled into the country is a novel interpretation of § 1225. *See also Matter of Oseiwusu*, 22 I&N Dec. 19, 20 (BIA 1998) (concluding that an alien paroled into the country is still an "arriving alien" and that an IJ has "no authority over the apprehension, custody, and detention of arriving aliens"). All that to say, the parties did not raise these specific arguments, so the Court need not resolve them.

8

automatic-stay regulation. *See*, *e.g.*, *Herrera v. Knight*, 2025 WL 2581792, at *7 (D. Nev. Sept. 5, 2025); *Silva v. Larose*, No. 25-cv-2329, 2025 WL 2770639, at *3 (S.D. Cal. Sept. 29, 2025).

The federal respondents contend that Mina's detention would be lawful under either §§ 1226 or 1225. As they see it, under § 1225(b), the IJ does not have jurisdiction to consider bond and Mina's detention is mandatory. Under § 1226(a), DHS's appeal of the IJ's bond determination stayed the bond order and Mina is detained pending the resolution of that appeal.

Mina acknowledges that aliens detained under § 1225 are subject to mandatory detention, so she focuses on § 1226. Thus, assuming, without deciding, that § 1226 applies to Mina's case, the Court will evaluate whether the automatic stay of the IJ's bond order under § 1226 violates Mina's due-process rights under the Fifth Amendment. However, even under her preferred section, Mina has not shown that her detention is unlawful at this point.

B. **Mina's Procedural-Due-Process Claim**

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *accord A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025) ("[T]he Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (quoting *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) (per curiam)). While certain constitutional protections do not extend outside the "geographic borders" of the United States, "legal circumstances change" as soon as an alien "enters the country." *Zadvydas*, 553 U.S. at 693.

As a threshold issue, there is some ambiguity about the precise nature of Mina's due-process claim. Mina does not expressly state whether she is challenging the automatic stay on substantive or procedural grounds—or both. She does argue, however, that *Mathews v. Eldrige*, 424 U.S. 319, 335 (1976), is the "appropriate test" to analyze her

9

claim. Courts generally apply the three-part test in *Mathews v. Eldridge* to determine whether a civil detention violates an individual's procedural-due-process rights. Under that test, the Court must consider (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and (3) the government's interest in maintaining the current process, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. *See Mathews*, 424 U.S. at 335.

Mina's liberty interest in avoiding a prolonged detention is somewhat limited here by her status as noncitizen. *See, e.g., Demore v. Kim*, 538 U.S. 510, 522 (2003) (noting that Congress has broad powers in the immigration context and "regularly makes rules that would be unacceptable if applied to citizens"); *Reno v. Flores*, 507 U.S. 292, 305-306 (1993) (same); *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976) (same). Thus, although the "Fifth Amendment entitles aliens to due process of law in deportation proceedings," *Flores*, 507 U.S. at 306, the Supreme Court has consistently "recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process," *Demore*, 538 U.S. at 523.

Mina's interest is also different than an alien who has been lawfully admitted to the United States. *See Zadvydas*, 533 U.S. at 693. "The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Id.* (citing *Leng May Ma v. Barber*, 357 U.S. 185, 188-90 (1958) (noting that an alien "paroled" into the United States pending admissibility had not effected an "entry")).

Mina has not provided, and the Court has not found, any case in which the Supreme Court has applied *Mathews v. Eldridge* when addressing constitutional challenges to immigration detention. *See, e.g., Demore*, 538 U.S. at 523, 526-29; *see also Dusenbery v. United States*, 534 U.S. 161, 168 (2002) ("[W]e have never viewed *Mathews* as announcing

10

an all-embracing test for deciding due process claims."). And while the Eighth Circuit has not weighed in on a due-process claim under § 1226(a), it has declined to apply *Mathews v. Eldridge* balancing in mandatory detention cases, noting "*Zadvydas* and *Demore* have already done whatever balancing is necessary." *Banyee v. Garland*, 115 F.4th 928, 933 (8th Cir. 2024).

Despite the dearth of authority on this specific issue, most district courts that have considered similar detention cases have done so under *Mathews* balancing, and Mina also frames her case in those terms. Therefore, the Court will evaluate Mina's procedural-due-process claim under *Mathews v. Eldridge* with the immigration context in mind.

### 1. Private Interest

Mina argues that her private interest here is "fundamental: freedom from detention." She argues that she could "theoretically remain in custody indefinitely." The federal respondents emphasize the temporariness of Mina's detention. They argue she is only detained "as her process unfolds," not indefinitely. Her removal case, they note, "will resume upon resolution of the first BIA appeal[.]" In the government's view, resolution is "undoubtedly forthcoming."

The Court does not doubt that Mina has a strong private interest in being free from detention. However, at the time of this Memorandum and Order, Mina has been detained under the automatic-stay provision for fewer than 90 days. The automatic-stay provision has yet to lapse. While her argument may gain strength if her detention becomes indefinite or unduly prolonged at some point down the line, she is not there yet.

### 2. Risk of Erroneous Deprivation

The second *Mathews* factor is "the risk of an erroneous deprivation of [Mina's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Mina argues the automatic stay carries a high risk of erroneously depriving her of her freedom because she "prevailed

11

at her bond hearing" and the stay "is not based on any new evidence, a finding of legal error, or a finding of likelihood of success on appeal." In the federal respondents' view, DHS's invocation of the stay is based on its belief that the IJ committed a legal error and that DHS would likely succeed on appeal. *See Yajure Hurtado*, 29 I&N Dec. at 216.

The Court cannot say at this point, that the automatic-stay regulation has erroneously deprived Mina of her liberty and that "substitute procedural safeguards" are needed. When Mina was detained, an ICE officer made an individualized custody determination. Mina was given an NTA explaining the reasons for her detention. She underwent a credible-fear interview. She was then able to request a custody redetermination before an IJ at her August 20, 2025, master-calendar hearing. Mina received that bond hearing, at which she was represented by counsel and could present evidence that might bear on the IJ's determination. Although the IJ's discretionary bond determination was stayed by DHS's appeal, that appeal is pending before the BIA. Thus, the probable value of additional procedurals safeguards is limited at this stage.

### 3. Government's Interest

Mina argues that the government's interest in detaining her under the automatic-stay provision is "comparatively very low." In her view, the government's interest in detaining her is because DHS maintains she is subject to mandatory detention under § 1225, which "carries little weight."

Unsurprisingly, the federal respondents disagree with this uncharitable minimization of the governmental interest. They argue that "Congress has made a legislative judgment to detain undocumented aliens during removal proceedings" and that the Supreme Court has recognized this interest to detain aliens pending removal proceedings. *See Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of this deportation procedure."); *Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("Proceedings to exclude or expel would be vain if those accused could not be held

in custody pending the inquiry into their true character, and while arrangements were being made for their deportation.").

The Court acknowledges the government has a substantial interest in enforcing the immigration laws as it interprets them. *See Dep't of State v. Munoz*, 602 U.S. 899, 911-12 (2024) ("[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens."). That interest may very well wane and become overshadowed by Mina's interest if detention becomes unduly prolonged and unreviewed. *See Velasco Lopez v. Decker*, 978 F.3d 842, 855 (2d Cir. 2020) (noting that the longer an alien's detention continues, "the greater the need for the Government to justify its continuation"). At this juncture in Mina's removal proceedings, however, and before the automatic stay has even lapsed, Mina has not convinced the Court that her interest clearly outweighs the government's.

### C. The Alleged *Ultra Vires* Nature of 8 C.F.R. 1003.19(i)(2)

Finally, Mina argues that the automatic-stay regulation is *ultra vires* because it "unlawfully eliminates IJs' discretionary authority to make custody determinations." *Ultra vires* claims "are confined to 'extreme' agency error where the agency has 'stepped so plainly beyond the bounds of [its statutory authority], or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court[.]'" *Fed. Express v. United States Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022) (quoting *Griffith v. Fed. Lab. Rels. Auth.*, 842 F.2d 487, 493 (D.C. Cir. 1988)) (alteration in original); *accord Oestereich v. Selective Serv. Sys. Loc. Board No. 11*, 393 U.S. 233, 238 (1968) (noting that *ultra vires* cases must go beyond mere error and amount to a "clear departure by the [agency] from its statutory mandate" or be "blatantly lawless" agency action). "An *ultra vires* challenge, in other words, is 'essentially a Hail Mary pass[.]'" *Fed. Express*, 39 F.4th at 765 (quoting *Nyunt v. Chairman, Broadcasting Board of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009)). Mina's Hail Mary pass falls incomplete.

13

The automatic-stay regulation provides for a temporary stay of an IJ's bond order pending the BIA's review when DHS objects to the bond order. That regulation is based on the Attorney General's discretionary authority to grant bond under § 1226(a). *See* 8 U.S.C. § 1226(a)(1) ("[T]he Attorney General may continue to detain the arrested alien; and *may* release the alien on bond . . .") (emphasis added). "The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." *Id.* at § 1226(b). Thus, the regulation does not give DHS the final word on bond, it merely preserves the status quo while the BIA (also under the Attorney General) reviews the bond order of an IJ exercising the Attorney General's authority by delegation.

The Court is not persuaded that a regulation that temporarily stays the effect of the Attorney General's delegated, discretionary authority to allow review by a higher authority (within the same agency) is "extreme" agency error "plainly beyond the bounds" of its statutory authority. *See Fed. Express*, 39 F.4th at 764. Section 1226 does not require the Attorney General to conduct bond hearings at all. Therefore, Mina has not convinced the Court that the automatic-stay regulation is "a clear departure" from the Attorney General's "statutory mandate" or "blatantly lawless." *See Oestereich*, 393 U.S. at 238.

### III. CONCLUSION

This case presents some challenging questions. The Court does not definitively rule out the possibility that Mina may qualify for habeas relief in the future. At present, however, the Court concludes that Mina's detention under the automatic-stay provision does not violate her procedural-due-process rights under the Fifth Amendment. And because the Court concludes that Mina's detention under § 1226 does not warrant habeas relief, it need not decide whether Mina is properly detained under both §§ 1225 and 1226. Accordingly,

IT IS ORDERED:

1. Petitioner Camila Fory Mina's Petition for Writ of Habeas Corpus (Filing No. 1) is denied.
2. A separate judgment will issue.

Dated this 10th day of November 2025.

BY THE COURT:

Robert F. Rossiter, Jr.
Chief United States District Judge